## PATRICK DRISCOLL *vs.* LEWISTON EQUITABLE CO-OPERATIVE SOCIETY.

*Corporation—withdrawal of stock therefrom.*

In 1863, a voluntary association was established by the name of the "Lewiston Equitable Co-operative Society" for the buying and selling to shareholders and others groceries, etc., and its constitution provided that members might "withdraw their funds by giving" certain notices, and its by-laws that when a notice to withdraw is given, his "membership ceases." In January, 1867, a corporation by the same name and for the same purpose, was organized under an act of the legislature. In September following, the agent and salesman of the corporation handed to the plaintiff a printed copy of the "constitution and by-laws of the Lewiston Equitable Co-operative Society, established December, 1863," informing him it was the constitution and by-laws of the defendant corporation, and thereupon the plaintiff purchased fifty shares of the stock, became a member, attended its meetings, had opportunity at all times to examine its constitution, by-laws, and records, and purchased goods of its agents, and received one dividend. By the by-laws of the corporation, members might, by giving notice, surrender their certificates of stock, and receive therefor its fair and equitable value, to be determined by the managers,—"provided that the assets shall be in excess of its liabilities, and not otherwise." The corporation became insolvent in December, 1868, and has continued so. In January, 1869, the plaintiff gave notice, as by the constitution and by-laws of the voluntary association, of his withdrawal of funds and membership, and brought this action to recover back his money. *Held*, (1) That the defendants were not bound by the rules of the association by estoppel; and (2) That this corporation is subject to R. S. c. 46, § 33.

KENT, J. This case is referred to the court, upon an agreed statement as to most of the facts, and the report of the evidence given as to the remainder.

The action is assumpsit to recover back the sum of two hundred and fifty dollars, paid in by the plaintiff for fifty shares of the capital stock of the company. The plaintiff avers in his declaration, that " thereby he became a shareholder, and entitled to all the rights and privileges of the society, and also, that by the rules of the same, he was entitled to interest and dividends arising from the business of the company, and upon compliance with certain rules established by the company, he had a right to withdraw his money so invested

with the accrued interest and dividends thereon. And he further avers that he has complied with all the rules of the corporation for such withdrawal, by giving such notice as is prescribed by the constitution and by-laws of said society,—in consideration whereof, the defendants then and there became liable, and promised, etc. The defendants are described in the writ as a corporation duly established by law, doing business at Lewiston.

It appears that the corporation was created by act of January, 1867; that the plaintiff became a shareholder and member in September, 1867; that after he became a shareholder he was duly notified of all meetings, and personally attended many of them; that he received one dividend; that the constitution, by-laws, and records of the society have been open to the plaintiff's inspection since his connection with the society, and, during this time, he has been accustomed to purchase goods at the society's store.

It further appears, satisfactorily, that the society or corporation became insolvent, and without assets or property sufficient to pay its liabilities before December, 1868, and has continued insolvent to this time. The plaintiff gave written notices in January and March, 1869, to the corporation. In the first, of his intention to withdraw his two hundred and fifty dollars, according to Art. 9 of the constitution of the society; and, in the second notice, that he withdrew his membership, in accordance with Art. 25 of the by-laws.

But the defendants say that they had no such articles in their charter or by-laws. As we understand the facts and the arguments, the plaintiff does not contend that there are any such rules adopted by the corporation, but he says that these were the rules of a voluntary, unorganized association, having the same name and existing for a like purpose. The plaintiff does not appear to have been a member of this voluntary association, nor is there any connection shown between the two organizations. The corporation was a new and independent creation, and proceeded to organize and to adopt a constitution and rules as to stockholders and their rights and duties; and by article 9 provided that stockholders may sur-

render their certificates of stock to the society and receive therefor its fair and equitable value to be determined by the managers, by giving notice beforehand, provided that the assets of the society shall be in excess of its liabilities, and not otherwise.

The plaintiff, not contending that these facts would sustain his action, says further, that one Burke, the defendants' agent, gave him a printed copy of the regulations of the former voluntary association, at or about the time he paid his first money, and told him it was the regulation and by-law book, and that he gave it to him on his asking for it. In this book are found the rules as to withdrawing, and which the plaintiff says he has complied with by the notices required; and he now contends, that the corporation was bound by those rules by estoppel, if by no other mode.

But it does not appear that Burke was an officer, or even a member of the corporation, or that he had any authority to deliver this book, or to make any representations, as to what by-laws the corporation had adopted.

Nor does it appear that he made any representations, or even that he knew that the plaintiff had an intention of becoming a member. Burke was the keeper of the store, the salesman of the corporation. It would be strange indeed if his mere act of handing this book, which on its face showed that it was one issued years before by an unchartered, voluntary company, without any evidence of prior authority to do so, on any subsequent ratification, could create or impose upon a corporation, which was in all respects independent, a code of laws and regulations touching vitally its interests and very existence.

The plaintiff was a member, attended meetings, had an opportunity to know what rules had been adopted, and it is too late now for him to invoke his ignorance of what had been done, and to claim to be governed by the rules of another association, never adopted or recognized by the corporation now defending.

We have before stated the substance of the declaration in this case. It does not proceed upon the ground of fraud or mistake, or false representations by defendants or their agents. It is based

on a contract, pure and simple. It lays the foundation for a promise in the fact that the plaintiff paid this money to this corporation, which undertook to act and be governed by certain rules by which at any time, on giving the required notice, he might withdraw his money and his membership, and on the allegation that he had complied with these rules.

He shows no such rules by this corporation, but attempts to show that he was induced to take these shares by the delivery and the reading of the book handed to him by Burke. If these acts were fraudulent or deceitful, then the remedy should be in some action in the nature of an action for a tort. This declaration cannot be sustained by anything short of evidence of such rules as are stated, existing as the rules of this corporation.

But there is another view, perhaps more conclusive than any other.

This corporation was subject to the general provision, embracing all corporations (except for literary, benevolent, or banking purposes), contained in R. S. c. 46, § 33. No such corporation is allowed to divide any of their corporate property, so as to reduce their stock below its par value, until all debts are paid, and then for purpose of closing its concerns.

It seems that this corporation was bankrupt before any notice of intended withdrawal by the plaintiff. A by-law of such corporation, which would allow the withdrawal of the whole capital by the members on demand or notice, when it was, in fact, insolvent, would be in direct contravention of the spirit and letter of this section. The grossest frauds might thus be perpetrated under such a rule. It would allow the corporators, when they discovered an impending insolvency, to divide the property, by notice, and leave the creditors remediless.

This may have been the reason why there was such a marked difference between the rules of the two associations as to withdrawal. The voluntary co-partnership was not a corporation under this law, and could make its own private agreements. But under the provisions of this section, no rule or by-law, by which capital

stock or any property could be divided in any manner, could be legal or binding. If, then, there had been any such by-law existing, and apparently binding on this corporation, it would be held null, and of no effect, because in contravention of the policy and the express enactments of the law of the State.

We see no ground on which this action can be sustained.

*Plaintiff nonsuit.*

APPLETON, C. J.; WALTON, DICKERSON, BARROWS, and TAPLEY, JJ., concurred.

*W. P. Frye & J. B. Cotton*, for the plaintiff.

*S. & J. W. May*, for the defendants.